# UNITED STATES DISTRICT COURT
## for the
## Eastern District of Texas
## Beaumont Division

FILED: **3/6/24**
U.S. DISTRICT COURT
EASTERN DISTRICT COURT
DAVID A. O'TOOLE, CLERK

RACHEL A NAPLES )
)
      *Plaintiff,* )
)
vs. )  Case No: 1:24cv86
)
TRUIST BANK )
)
      *Defendants.* )

## PLAINTIFF'S COMPLAINT FOR DAMAGES AND JURY DEMAND

COMES NOW, person RACHEL A NAPLES, presented by woman Rachel Ann Naples, allege and state as follows: **(Please note that spelling of each name is important and will always be as above throughout this complaint for clarity in the court.)**

### I. Introduction

1. The plaintiff's cause of action is brought before this Honorable Court for actual, statutory, and punitive damages, against Defendant TRUIST BANK for peonage by subjecting plaintiff to being held in debt servitude due to fraud, pursuant to 18 U.S.C. § 1581, *et al.*, under the threat of unauthorized account closure and injury to plaintiff's public credit profile.

1

## II. JURISDICTION AND VENUE

2. Through the power of naturalization, found in 8 U.S.C. § 1101(a)(23), Rachel Ann Naples confers the nationality of the State called "STATE OF TEXAS" on RACHEL A NAPLES, after birth, by any means whatsoever. This satisfies the jurisdictional requirements of the court.

3. Rachel Ann Naples confers that RACHEL A NAPLES will be on a general appearance. Rachel Ann Naples will be speaking on behalf of RACHEL A NAPLES because RACHEL A NAPLES is incapable of speaking or writing.

4. TRUIST BANK is a person doing business in "STATE OF TEXAS," through the power of naturalization, and is within the jurisdiction of this Honorable Federal Court.

## III. PARTIES

5. Plaintiff is a person residing in Orange County, Texas.

6. Plaintiff resided in Travis County, Texas previously.

7. Defendant TRUIST BANK is listed by the Texas Comptroller of Public Accounts as having a Texas Taxpayer Number and Domicile State as North Carolina.

8. Defendant acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers.

9. Defendant's agents, employees, officers, members, directors and representatives were working within the course and scope of their employment when taking the actions stated herein.

## IV. GENERAL FACTUAL ALLEGATIONS

10. RACHEL A NAPLES has a Visa credit card account ending in 4835 with TRUIST BANK.

11. Rachel Ann Naples gave permission to TRUIST BANK to access and use the credit of RACHEL A NAPLES.

12. For months this account was improperly performed on by Rachel Ann Naples on behalf of RACHEL A NAPLES.

13. Improper performance was by submitting extraneous negotiable instruments called Federal Reserve Notes.

14. Proper performance would have been to indorse the original collateral security under special negotiation prior to it being exchanged for Federal Reserve Notes.

15. Had Rachel Ann Naples known, Rachel Ann Naples would have done special indorsements on the collateral security and/or "bills" from the beginning.

16. Rachel Ann Naples never intended to do ANY blank indorsements on behalf of RACHEL A NAPLES.

17. Rachel Ann Naples failed to do a special indorsement on the original collateral security.

18. Proper performance is done primarily through clear orders and special indorsements.

19. Improper performance is done via blank indorsements and lack of orders.

20. Proper performance balances the accounting.

21. Improper performance unbalances the accounting.

22. There were promissory notes made on this account.

23. A promissory note is an unconditional promise to pay.

24. The promissory notes are negotiable instruments. Promissory note and "note" mean the same thing.

25. "Bill of Exchange" and "bill" mean the same thing.

26. Federal Reserve Notes are promissory notes.

27. Federal Reserve Notes are negotiable instruments.

28. All promissory notes and bills of exchange are collateral securities in accordance with 12 U.S.C. § 412.

29. Each month there was a billing statement generated on the above account.

30. A "billing statement" is an unconditional order to pay.

31. A "billing statement" or "bill" or any similar language is another term to describe a "bill of exchange".

32. An unconditional order to pay is a bill of exchange.

33. A bill of exchange is a negotiable instrument.

34. Bills of exchange are collateral securities in accordance with 12 U.S.C. § 412.

35. All promissory notes produced by RACHEL A NAPLES are under the purview of 18 U.S.C. § 8.

36. All bills of exchange sent to RACHEL A NAPLES are under the purview of 18 U.S.C. § 8.

37. The Federal Reserve Bank is the custodian to pay on behalf of obligations or other securities of the United States (18 U.S.C. § 8).

38. Plaintiff sent orders that were received by TRUIST BANK.

39. Parcel was addressed to CEO, TRUIST BANK CARD MEMBER SERVICES and delivered on December 28, 2022 at 5:24 p.m.

40. Parcel was sent USPS certified mail #7022 1670 0001 5451 4867.
41. Inside this parcel was an IRS form 2848 Power of Attorney and notarized Power of Attorney regarding agent Rachel Ann Naples and a Copy B of 1099a.
42. Inside this parcel were instructions/orders stated by Rachel Ann Naples how she would like the Visa credit account to be handled from now on as well as requesting the address for whom shall process the negotiable instruments at TRUIST BANK.
43. THREE additional packets were sent TRUIST BANK CFO via USPS Certified Mail.
44. The parcels included detailed orders on claim to all titles, rights, guaranteed equity, and for the principal's balance to be transferred to the principal's account each and every billing cycle for set off on behalf of the principal due to fraud.
45. These parcels also included a Notarized Statutory Durable Power of Attorney regarding Rachel Ann Naples.
46. The orders inside these parcels constitute unconditional tender of payment in accordance with UCC 3-603.
47. This fraud was due to lack of full disclosure and transparency on the terms of the credit account as well as the collateralization of the original promissory note.
48. These parcels each contained a bill of exchange "Accepted for Deposit", with a special indorsement by Rachel Ann Naples FOR PRINCIPAL RACHEL A NAPLES. The "bills" sent to plaintiff had a positive number indicating credit owed to account. Therefore, plaintiff special indorsed the bill for the transfer of her credits to account.
49. The term "US dollars" includes Federal Reserve Notes.
50. Due to the original application having already been swapped for Federal Reserve Notes after the application was indorsed with a blank indorsement, the orders inside

the parcel were a payment for US dollars.

51. An unconditional order to pay is a bill of exchange. The orders sent by plaintiff are an unconditional order to pay on this account.

52. RACHEL A NAPLES is now the person entitled to enforce all negotiable instruments on the above account.

53. RACHEL A NAPLES is now the holder in due course regarding all negotiable instruments on the above account.

54. Any previous arbitration clauses or agreements are hereby void due to the extent of alleged felonies and fraud associated with this case. Any factors that the credit application was approved upon are no longer relevant due to the original security (note) being the only collateral needed to secure this Visa credit account.

## V. COUNT ONE – BREACH OF CONTRACT:

55. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraphs 1-54.

56. Rachel Ann Naples was attempting to perform on the accounts.

57. The definition of "payment" is: "The fulfillment of a promise, or the performance of an agreement".

58. One definition for "tender" is: "The offer of performance, not performance itself, and, when unjustifiably refused, places other party in default and permits party making tender to exercise remedies for breach of contract".

59. The above definition is in accord with UCC 3-603(b).

60. Rachel Ann Naples previously submitted another entire packet containing a letter of instructions and account ownership as well as bills of exchange in order to

perform on the credit card account in effort to uphold her contractual obligations.

61. Rachel A Naples made three more additional attempts to perform on the credit card account by submitting to TRUIST BANK an additional 3 packets once again containing letter of instructions and a bill of exchange.

62. The letters of instructions and the bills of exchange were ignored (not credited to the account).

63. The bills of exchange were retained by TRUIST BANK.

64. Had someone spoken to Rachel Ann Naples about her options, she would have done a special indorsement monthly on any instruments to properly perform.

65. Rachel Ann Naples desperately wanted to perform. This is shown by her multiple attempts to perform.

66. These situations being persistently ignored is evidence of dishonor.

67. This dishonor caused harm to Rachel Ann Naples: anxiety, depression, personal and financial hardship, injury to her credit profile and loss of use of credit card due to Rachel Ann Naples not getting the information needed to properly move forward and clarify or complete her attempts to perform.

### VI. COUNT TWO – BREACH OF FIDUCIARY DUTIES

68. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraphs 1-67.

69. RACHEL A NAPLES is the beneficiary of TRUIST BANK.

70. TRUIST BANK has a fiduciary duty to the financial success of RACHEL A NAPLES.

71. TRUIST BANK is paid to ensure the law is correctly applied in respect to

beneficiary RACHEL A NAPLES.

72. TRUIST BANK has an obligation and desire to ensure that UCC ARTICLE 3 is properly followed.

73. TRUIST BANK has an obligation and desire to ensure that the Emergency Banking Act of 1933 is followed.

74. Once presented with orders or conditional acceptances above, TRUIST BANK never attempted to clarify or perform for Rachel Ann Naples on behalf of RACHEL A NAPLES.

75. TRUIST BANK follows 12 U.S.C. § 412.

76. TRUIST BANK has access to Federal Reserve Window services.

77. TRUIST BANK acknowledges that it would in the best of interest of their beneficiaries to do special indorsements on negotiable instruments.

78. TRUIST BANK acknowledges that, if clients knew how to do a special indorsement, a vast majority would do it.

79. TRUIST BANK never mentioned to Rachel Ann Naples or RACHEL A NAPLES about the benefits of special indorsements.

80. This harmed RACHEL A NAPLES by now having an imbalanced account which was closed by TRUIST BANK without authorization from RACHEL A NAPLES. This has left RACHEL A NAPLES no other option but to work to acquire extraneous and irrelevant Federal Reserve Notes to send them in to TRUIST BANK to "pay" the account.

81. This breach of fiduciary duty has caused harm such as, anxiety and fear over use of the credit account and the extraneous paying of bills that is entirely

unnecessary and struggle to keep her public credit profile in good standing.

### VII. COUNT THREE – 12 U.S.C. § 504 (CIVIL MONEY PENALTY- FEDERAL RESERVE ACT):

82. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraphs 1-81.

83. This statute is involved because TRUIST BANK never attempted to work with Rachel Ann Naples's performance.

84. This Civil Money Penalty is collected and deposited into the Treasury, plaintiff intends to send a copy of this complaint to the SEC, Federal Reserve, Office of the Comptroller as well as the Treasury for assessment, inspection and collection. PLAINTIFF MAY BE WILLING TO FOREGO THIS STEP IF DEFENDANT IS WILLING TO IMMEDIATELY ASSIST PLAINTIFF IN HER PRIOR ORDERS FOR THE EXCHANGE OF COLLATERAL SECURITIES (DEFENDANT CAN SIMPLY PLACE "N/A" ON THIS LINE ITEM FOR ANSWER).

### VIII. COUNT FOUR – 18 U.S.C § 1956 (LAUNDERING OF MONETARY INSTRUMENTS):

85. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraphs 1-84.

86. Plaintiff became the person entitled to enforce these instruments once negotiation was rescinded and clarified.

87. Plaintiff became the holder in due course of the instruments once negotiation was rescinded and clarified.

88. Illegal possession and transfer of above negotiable instruments are retained currently with defendant TRUIST BANK.

### IX. COUNT FIVE – 18 U.S.C. § 2314 (TRANSPORTATION OF STOLEN SECURITIES):

89. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraphs 1-88.

90. Unknown negotiation via a blank indorsement allowed TRUIST BANK to take possession of all collateral securities on this account.

91. This transportation should have been done under special negotiation and should have been temporary until the application for notes via 12 U.S.C. § 412 was completed at the Federal Reserve Window.

92. Each individual transaction on this account would be a separate charge.

93. The bills of exchange that were sent in by Rachel Ann Naples were never returned and also never credited to the account as a payment (purloined).

### X. COUNT SIX -- 18 U.S.C. § 1348 (SECURITIES AND COMMODITIES FRAUD):

94. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegation in paragraphs 1-93.

95. Plaintiff was never informed as to these instruments being negotiable.

96. Plaintiff was never informed of various optional indorsements in accordance with UCC Article 3.

97. Plaintiff has a responsibility to avail himself of his optional indorsements, but TRUIST BANK could have spent a very short period of time to educate plaintiff about indorsements as a part of their fiduciary duties.

98. Rachel Ann Naples has clarified and ordered all current and future negotiation while rescinding all previous blank negotiation under fraud.

99. Fraud is due to complete failure to disclose the terms and options of signing/ indorsing above collateral securities.

100. This damaged plaintiff materially due to valuable instruments being purloined and not available for plaintiff.

101. Due to RACHEL A NAPLES'S signature being the birth of value for all the above negotiable instruments, Rachel Ann Naples and RACHEL A NAPLES are the secured parties for all transactions in this deal.

102. Each individual credit transaction on this account would be a separate charge of this felony.

## XI. COUNT SEVEN – 18 U.S.C. § 1581 (PEONAGE):

103. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraphs 1-102.

104. Plaintiff was forced to work and perform under this contract as "debt", when the debt was only existing due to a failure to use a special indorsement on the original note.

105. Plaintiff had to work or find entirely irrelevant negotiable instruments in order to falsely satisfy "performance" on this account.

106. TRUIST BANK made it appear that plaintiff was in debt by failing to help the plaintiff do a special indorsement.

107. TRUIST BANK has persisted with pursuit of collections, injury to public credit profile and account closure demanding plaintiff to tender extraneous Federal Reserve Notes in order to "perform" within the false contract.

## XII. COUNT EIGHT – 18 U.S.C. § 1583 (ENTICEMENT INTO SLAVERY):

108. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraphs 1-107.

109. Due to a failure to do a special indorsement (which could have easily been done), plaintiff was enticed into struggling to make monthly payments using irrelevant and and extraneous negotiable instruments called Federal Reserve Notes.

110. Plaintiff was intimidated with fear of losing her very good credit score and the use of her credit card to perform in an absolutely unnecessary way (slavery).

111. Plaintiff got absolutely no equal consideration in exchange for her collateral securities and negotiable instruments beyond the facilitation of security swaps and transfers.

112. TRUIST BANK could have informed plaintiff of his option to do a special indorsement rather than a blank indorsement.

113. Due to ease of which TRUIST BANK could have helped and informed the plaintiff of a special versus blank indorsement, it is assumed that the intent was to entice the plaintiff into slavery.

### XIII. COUNT NINE – 18 U.S.C. § 1584 (SALE INTO INVOLUNTARY SERVITUDE):

114. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraphs 1-113.

115. Due to the financial gain of having the plaintiff do a blank indorsement rather than a special indorsement on the original collateral security, TRUIST BANK had financial motive to ensure plaintiff indorsed with a blank indorsement.

116. Intent to have plaintiff sign with a blank indorsement was pre-conceived by

TRUIST BANK.

117. Intent to have plaintiff do a blank indorsement allowed TRUIST BANK to take possession of the collateral securities without it being legally considered theft.

118. While not legally theft, that transaction was not equal consideration.

119. Due to the terms being so vague (uncommunicated), this can be construed as coercion and fraud.

120. Plaintiff was left in a situation where she felt compelled to try to provide entirely irrelevant Federal Reserve Notes in an effort to prevent loss of use of her credits card and an effort to save her very good standing public credit profile.

### XIV. COUNT TEN – 18 U.S.C. § 1589 (FORCED LABOR):

121. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations in paragraphs 1-120.

122. 18 U.S.C. § 1589 includes forced services.

123. Plaintiff was forced to provide entirely irrelevant Federal Reserve Notes after her collateral security was purloined via a blank indorsement.

124. TRUIST BANK should have been providing a service of swapping the collateral security under special negotiation.

125. RACHEL A NAPLES would have been more than happy to pay a small swap fee for the service of exchanging the collateral security at the Federal Reserve Window.

126. Instead, the plaintiff was forced to perform each month unnecessarily under threat of punishment (account closure, loss of use, serious injury to public credit profile).

### XV. COUNT ELEVEN – 18 U.S.C. § 1593A (BENEFITTING FINANCIALLY FROM PEONAGE, SLAVERY AND TRAFFICKING IN PERSONS):

127. Plaintiff realleges and restates the foregoing jurisdictional allegations and general

factual allegations in paragraphs 1-126.

128. TRUIST BANK benefits from a blank indorsement by being able to keep all the Federal Reserve Notes after the application for notes is complete (12 U.S.C. § 412).

129. TRUIST BANK benefits from a blank indorsement by being able to take back property through the unauthorized closure of plaintiff's credit card account and furthering injury to plaintiff's public credit profile if the plaintiff was unable to supply irrelevant and extraneous Federal Reserve Notes each month.

130. TRUIST BANK pretends it is the "lender" or "creditor" by claiming the collateral security, after it is released with a blank indorsement.

131. Under special negotiation RACHEL A NAPLES is actually the lender/creditor and Rachel Ann Naples is the borrower. TRUIST BANK is just a currency exchange at this point and facilitates Federal Reserve services.

132. TRUIST BANK collects substantially more Federal Reserve Notes by carefully failing to inform their beneficiaries of their indorsement options.

133. Due to the lack of terms and communications, it is assumed that TRUIST BANK intends to entice its beneficiaries into slavery for financial gain.

### XVI. DEMANDS FOR RELIEF

134. Visa credit account ending in 4835 to be reopen, ready to use immediately.

135. Visa credit account ending in 4835 to have a credit limit of $25,000.

136. TRUIST BANK is to accept special indorsement of negotiable instruments for set off each and every billing cycle until RACHEL A NAPLES or appointed agent, Rachel Ann Naples, terminates the Visa credit account ending in 4835.

137. TRUIST BANK is to correct the account status with all credit reporting agencies

immediately to "pays on time by consumer".

138. $304,500.00 (three hundred, four thousand and five hundred dollars) in damages. Payable in Federal Reserve Notes.

## XVII. SUMMARY

NOW, THEREFORE, in accordance with the pertinent legal provisions and in the Interest of justice, the Plaintiff respectfully requests this Honorable Court to issue an Order for the award of monetary damages against the Defendant, TRUIST BANK. The Plaintiff further seeks any additional relief that this Court, in its wisdom, may consider just and equitable given the circumstances at hand.

THE PLAINTIFF ENTERS THIS COURT PROCEEDING WITH A CONSTRUCTIVE INTENT, VESTED IN THE DESIRE TO COLLABORATE WITH THE DEFENDANT TOWARDS A FAIR AND EQUITABLE CONCLUSION.

Dated: February 29th, 2024                              RESPECTFULLY SUBMITTED,

BY:    /s/ Rachel Ann Naples
Rachel Ann Naples
Plaintiff, Pro Se
rachelnaples@me.com
737-288-7467
450 Jeanette St
Vidor, Texas 77662

## CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2024, a copy of the foregoing was filed with the Clerk of this Court as is required by Pro Se litigants via USPS. The mailing address is as follows: United States District Clerk, Jack Brooks Federal Building and United States Courthouse, 300 Willow Street Suite 104, Beaumont, Texas 77701.
It will also be mailed through USPS certified mail with a signature required pursuant to all summons issued by the Clerk.

Rachel Ann Naples
450 Jeanette St.
Vidor, TX 77662





CLERK, U.S. DISTRICT COURT
RECEIVED
MAR 06 2024
EASTERN DISTRICT OF TEXAS
BEAUMONT, TEXAS

United States District Clerk
Jack Brooks Fed. Bldg and U.S. Courthouse
300 Willow Street Suite 104
Beaumont, Texas 77701